Maurice A. KRISEL, Plaintiff-Appellant,

v.

Rafael DURAN, Sam Van Hining and Phillips Petroleum Company, Defendants,

and

Economic Development Administration of Puerto Rico, Defendant-Appellee.

No. 131, Docket 30980.

United States Court of Appeals Second Circuit.

Argued Oct. 23, 1967.

Decided Dec. 6, 1967.

---

**180**

Michael H. Cardozo, IV, Washington, D. C., and Roman Beck, New York City, (Cardozo & Cardozo, Benjamin M. Cardozo, Maurice A. Krisel, and Edwin D. Kyle, New York City, on the brief), for plaintiff-appellant.

William D. Rogers, Washington, D. C. (Jose C. Aponte, Atty. Gen., Commonwealth of Puerto Rico, John T. Rigby, of Arnold & Porter, Washington, D. C., Robert A. Bicks, of Breed, Abbott & Morgan, New York City, on the brief), for defendant-appellee.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

PER CURIAM:

The facts are fully recited in Judge Weinfeld's very comprehensive opinion reported in 258 F.Supp. 845 (S.D.N.Y. 1966) and will only be mentioned in essential outline here. In his complaint, brought against Economic Development Administration of Puerto Rico (EDA), two of its officials and Phillips Petroleum Company, the plaintiff-appellant alleged that he had created a novel idea which he communicated to EDA on its promise not to disclose and that EDA and the other defendants had breached that promise. The sole issue on appeal is whether there was diversity of citizenship between the plaintiff, a citizen of the State of New York and EDA.

EDA was created in 1950 as an agency of the Commonwealth of Puerto Rico[1] to engage in economic research, encourage and develop industrial growth and promote tourism. It was not incorporated, nor could it sue or be sued. Its only source of revenue was from annual appropriations by the legislature of the Commonwealth to which is submitted its budget. Prior to 1950 the functions of EDA were, with other pursuits, performed by the Puerto Rico Industrial Development Co. (PRIDCO), a public corporation which had power to make contracts, sue and be sued, and participate in various commercial and industrial enterprises which it continued after that date. In granting EDA's motion to dismiss for lack of jurisdiction, the district court concluded, after considering the intent and purpose of the Puerto Rico Legislature in enacting the applicable statutes, the history of EDA and evidence of its establishment and operation, that in all respects "EDA was acting as the agency and alter ego of the Commonwealth and that the Commonwealth is the real party in interest," and that there was, therefore, no diversity.

The appellant argues that when a state[2] engages in activities that divest it of sovereign immunity, it becomes a citizen of that state for diversity purposes; and that EDA was directly, and through its control over PRIDCO indirectly, engaged in ordinary business or non-governmental functions and was not entitled to sovereign immunity. He relies upon Gerr v. Emrick, 283 F.2d 293 (3 Cir. 1960), cert. denied 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961), a suit by a citizen of Connecticut against the Pennsylvania Turnpike Commission for negligence, but the Gerr case held specifically that the Commission was not the alter ego of the State, that it had the status of a municipal corporation and was therefore a citizen of the State for purposes of diversity, and that "a suit

---

1. Reorganization Plan No. 10 under Laws of Puerto Rico Title 23, § 231.

2. 28 U.S.C. § 1332(d) equates Puerto Rico, for purposes of the diversity statute, with the "States." Lummus Co. v. Commonwealth Oil Refin. Co., 195 F. Supp. 47 (S.D.N.Y.1961).

against the Commission is not a suit against the Commonwealth."

 "A state is not [itself] a citizen" and a suit "between a state and a citizen * * * of another state is not between citizens of different states * * *." Postal Telegraph Cable Co. v. State of Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). It is immaterial whether the state engages in activities in its own name or through an "arm" or "alter ego." For the purpose of diversity jurisdiction, the determinative factor is whether the state is the real party in interest. State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 199–200, 49 S.Ct. 104, 73 L.Ed. 262 (1929); DeLong Corp. v. Oregon State Highway Comm., 233 F.Supp. 7, 10 (D.Ore.1964), aff'd, 343 F.2d 911 (9 Cir.), cert. denied 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965).

The issue of whether or not the instrumentality of a state is a citizen of that state for diversity purposes is separate and distinct from the issue of sovereign immunity. A state may waive its sovereign immunity but it cannot waive its lack of status as a citizen for the purpose of diversity jurisdiction under Title 28 U.S.C. § 1332. "No consent by the state to submit itself to suit could affect the question of diverse citizenship." State Highway Commission of Wyoming v. Utah Construction Co., supra. See People of State of California ex rel. McColgan v. Bruce, 129 F.2d 421, 147 A.L.R. 782 (9 Cir.), cert. denied, 317 U.S. 678, 63 S.Ct. 157, 87 L.Ed. 544 (1942). A state may, in its own name or through an alter ego, carry on activities which are traditionally regarded as proprietary functions but neither the state nor its alter ego thereby becomes a citizen for the purpose of diversity jurisdiction. State Highway Commission of Wyoming

v. Utah Construction Co., supra; North Dakota v. National Milling & Cereal Co., Inc., 114 F.2d 777, 779 (8 Cir. 1940).[3]

The judgment of the District Court is affirmed.

---

3. We do not understand Mr. Justice Reed's language in Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 49, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) to be to the contrary. The Court in that case addressed itself to the question of the State's sovereign immunity rather than status under the diversity statute. Id. at 53–54, 64 S.Ct. 873.