**Dimas Torres CANCEL et al.,**
**Plaintiffs,**

v.

**SAN JUAN CONSTRUCTION CO., INC.,**
**subsidiary of Ramirez de Arellano,**
**et al., Defendants.**

**Civ. No. 1149-73.**

United States District Court,
D. Puerto Rico.

Dec. 30, 1974.

---

Pedro Aguirre, Santurce, P. R., for plaintiffs.

Luis M. Pagan, Santurce, Roberto Betancourt Resto, Alfredo Rafucci Carrio, Dept. of Justice, Com. of P. R., Jose F. Quetglas-Alvarez, San Juan, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This is a class suit on the part of 300 persons residents of Villa Cooperativa. It is alleged that plaintiffs were induced to invest in houses pertaining to Villa Carolina at Carolina, Puerto Rico. These houses were constructed by San Juan Construction under the supervision and approval of the Federal Housing Administration (FHA). It is also alleged that one hundred percent (100%) of these houses have faulty construction and that in spite of the protest of all residents in this development neither FHA, Cooperative Development Co. and/or the Commonwealth of Puerto Rico have done anything to remedy this situation. That Cooperative Development Co. jointly with FHA, have promised to grant the members of this development property rights but have never fulfilled their promises. Other claims are also included in the complaint.

This case was originally filed in the Superior Court, San Juan Part, of the Commonwealth of Puerto Rico, and removed to this Court by defendant FHA under Title 28, United States Code, Section 1442(a)(1).

Defendants Cooperative Development Administration and the Commonwealth of Puerto Rico have filed a motion to dismiss.

The Commonwealth of Puerto Rico possesses many of the attributes of sovereignty possessed by the States, immunity from suit without consent being one of them. Porto Rico v. Rosaly, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507 (1913). Peñagaricano v. Allen Corp., 267 F.2d 550 (1 Cir. 1959); Krisel v. Duran (SDNY 1966), 258 F.Supp. 845.

In Krisel v. Duran, supra, the Court stated the following:

". . . and if it appears that the Commonwealth is the real, substantial party against whom the claim is asserted, the jurisdictional attack based upon the plea of sovereign immunity must be upheld even though the Commonwealth is not specifically named as a defendant."

The Commonwealth of Puerto Rico has not consented to be sued in this Court. See Salkin v. Commonwealth of Puerto Rico (1 Cir. 1969), 408 F.2d 682.

The defendant Cooperative Development Administration (CDA), moves to dismiss the complaint on the ground that it is an agency of the Commonwealth of Puerto Rico, and as such, enjoys sovereign immunity.

The determination as to when a government agency is so related to the Commonwealth so as to be considered one and the same goes to the jurisdiction of the court and federal law controls. The Laws of the Commonwealth of Puerto Rico. are applicable only insofar as they define the status and nature of the agency and its relation to the sovereign. See Krisel v. Duran (SDNY 1966), 258 F.Supp. 845, affd. 2 Cir., 386 F.2d 179, cert. den. 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303; Canadian Transport Co. v. Puerto Rico Ports Authority, 333 F.Supp. 1295 (DCPR 1971).

Several factors should be taken into consideration in determining whether CDA is an arm or alter ego of the Commonwealth of Puerto Rico. Among these are the following: Determination of the source of the funds to pay a judgment favorable to the plaintiff (whether the agency has the funds or the power to satisfy the judgment); whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation and whether the sovereign has immunized itself from responsibility for the agency's operations. See Krisel v. Duran, supra.

Even though one of the criteria is not controlling over all others, there are two which are of more importance than the others and have been more con-

sistently applied. The first important factor is the determination of the source of the funds to pay a judgment favorable to plaintiff. Clearly, if the funds must come from the Commonwealth Treasury, the Commonwealth will have a more than passing interest in the litigation. In determining this the Court studies how the Commonwealth has immunized itself from the obligations incurred by the agency.

CDA was created with a view to transforming it into an instrument more effective in the promotion of the cooperative associations necessary for the continuous and progressive development of the people of Puerto Rico, through the broadest civil participation in the production of social wealth and the fairest distribution thereof among our people.[1]

Section 931, supra, reads in part as follows:

". . . For this reason it is hereby declared that the programs of this *agency* partake of the nature of public utility and necessity."

(emphasis added).

Although in connection with its activities CDA's funds are disbursed in the manner customarily used in the private industry,[2] this is only one aspect of the management of its funds. However, all funds are covered into the Treasury of Puerto Rico,[3] its accounting system was established in consultation with the Secretary of the Treasury;[4] CDA's property is controlled by the Secretary of the Treasury to the same extent that he usually exercises control over the property of the regular departments and *agencies* of the Government of the Com-

monwealth of Puerto Rico;[5] its motor vehicles are subject to the authority of the Office of Transportation of the Commonwealth of Puerto Rico.[6]

After analyzing all the previous facts and specially based on Section 931k, supra, we understand that in case of a judgment in favor of the plaintiffs the source of the funds will come from the funds of the Commonwealth of Puerto Rico.

The other important factor is whether the agency has the power to sue and be sued. This factor has been stressed in the cases of Alcoa Steamship Co. v. Perez (1 Cir. 1970), 424 F.2d 433; Toa Baja Development v. Garcia Santiago (DCPR 1970), 312 F.Supp. 899; Krisel v. Duran, supra; Canadian Transport Co. v. Puerto Rico Ports Authority, supra. We have found no provision under the Act which created CDA which gives power to CDA either to sue or to be sued.

In sum, the legislation under which CDA was organized establishes that it has the attributes and restrictions of a traditional executive agency of government and is far from autonomous and that in this case the Commonwealth and not the agency is the real party in interest.

Therefore, defendants Commonwealth of Puerto Rico and Cooperative Development Administration's motion to dismiss is hereby granted.

Defendant Federal Housing Administration (FHA), also filed a motion to dismiss. Since 1965, FHA no longer exists, all its powers, functions and duties were transferred to the Housing and Urban Development Department of the

---

1. 5 Laws of Puerto Rico Annotated, Section 931.

2. 5 Laws of Puerto Rico Annotated, Section 931j.

3. 5 Laws of Puerto Rico Annotated, Section 931k.

4. 5 Laws of Puerto Rico Annotated, Section 931*l*.

5. 5 Laws of Puerto Rico Annotated, Section 931m.

6. 5 Laws of Puerto Rico Annotated, Section 931n.

**920**

United States. Title 42, United States Code, Section 3534. See also 1965 U.S. Code Cong. and Admin.News, p. 3041, where it is stated that the bill creating the Housing and Urban Development Department made no provision for the continuation of the Federal Housing Administration.

Unlike FHA, no statute authorizes the Secretary of Housing and Urban Development Department to sue or be sued in a competent jurisdiction. Title 42, United States Code, Section 3535. See also Rodriguez Portela & Co. Inc. v. Kings Hill Corporation, et al, Civil No. 201–73, Order of May 30, 1973.

■■ This suit was filed on December 13, 1973 at the Superior Court, San Juan Part, of the Commonwealth of Puerto Rico, was removed to this Court by FHA under Section 1442(a)(1) of Title 28, United States Code. Since FHA no longer exists, it cannot be considered as an *agency* under Section 1442(a)(1),[7] supra, and as a result of that, this Court lacks jurisdiction. The law is clear that the pleadings at the time of removal are the basis for determining jurisdiction. See Gracier v. Edwards Dental Supply Co., 80 F.Supp. 956 (DCND Cal.1949); Rank v. (Krug) United States, 142 F.Supp. 1 (SD Cal. 1956); Great Northern Railway Co. v. Alexander, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1917); Stauffer v. Exley (9 Cir. 1950), 184 F.2d 962.

In view of the foregoing, FHA's motion to dismiss is granted and this case is remanded to the Superior Court, San Juan Part, of the Commonwealth of Puerto Rico.

It is so ordered.

7. "(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
   (1) Any officer of the United States or *any agency* thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." (emphasis added).